UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RAI INDUSTRIAL FABRICATORS, LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>FEDERAL INSURANCE COMPANY, SAUER, INC., and CONCEPT STEEL, INC.,<br><br>Defendants. | Case No. 5:16-cv-03674-EJD<br><br>**ORDER GRANTING SAUER'S MOTION TO DISMISS AGATE'S SECOND AND FOURTH COUNTERCLAIMS WITH LEAVE TO AMEND; GRANTING CONCEPT STEEL'S MOTION TO DISMISS WITH LEAVE TO AMEND; SETTING CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. Nos. 30, 43 |
| SAUER, INC.<br><br>Counter-Claimant,<br><br>v.<br><br>RAI INDUSTRIAL FABRICATORS, LLC, and AGATE STEEL, INC.,<br><br>Counter-Defendants. | |

## I. INTRODUCTION

This lawsuit arises out of the construction of the Operational Readiness Training Complex at Fort Hunter Liggett, United States Army Combat Support Training Center, located in Monterey County, California ("Project"). The Army Corp of Engineers awarded a contract to Sauer, Inc. ("Sauer") to design and build the Project. Pending before the Court are two motions to dismiss.

First, Sauer moves to dismiss the claims of the subcontractor responsible for steel erection work, Agate Steel, Inc. ("Agate"), for delay and disruption and negligent misrepresentation. Second, the subcontractor for steel stairs, Concept Steel, Inc. ("Concept Steel"), moves to dismiss the claims of the primary steel contractor RAI Industrial Fabricators ("RAI"), or in the alternative to stay the case pending resolution of RAI's claims against Sauer.

## II. BACKGROUND

Sauer is the designer and builder of the Project. Federal Insurance Company ("Federal") issued a payment bond to Sauer. In November of 2014, Sauer issued a purchase order to RAI to furnish the structural and miscellaneous steel materials for the Project ("RAI PO"). RAI in turn issued a purchase order to Concept Steel to provide certain steel labor, equipment and materials for the Project, including prefabricated steel stairs ("Concept PO"). RAI alleges that Sauer is liable for breach of contract and unjust enrichment because Sauer failed to pay for the materials RAI provided. RAI also asserts a Miller Act claim against Sauer and Federal seeking payment the materials RAI provided.

Further, RAI asserts a breach of contract claim and equitable indemnity claim against Concept Steel, based on the following:

> 45. Sauer has alleged that there were certain deficiencies with the stairs—specifically the allegedly insufficient level of prefabrication of the steel stairs.
>
> 46. RAI disputes that there are any deficiencies in its work, but to the extent there are deficiencies with the steel stairs, it would be a breach of contract by Concept [Steel] as any deficiencies in the stairs would have been a result of Concept [Steel's] work.
>
> 47. Sauer has withheld the principal balance of the RAI PO . . . because of this claim.
>
> 48. To the extent the Court finds Sauer's claim concerning the stairs meritorious, Concept [Steel] will have breached the Concept [Steel] PO for which it will be commensurately liable to RAI.
>
> \* \* \*
>
> In the event it is determined that RAI is liable to Sauer for the

Case No.: 5:16-cv-03674-EJD
ORDER GRANTING SAUER'S MOTION TO DISMISS AGATE'S SECOND AND FOURTH COUNTERCLAIMS WITH LEAVE TO AMEND; GRANTING CONCEPT STEEL'S MOTION TO DISMISS WITH LEAVE TO AMEND; SETTING CASE MANAGEMENT CONFERENCE
2

> claims of Sauer relating to the staircase, RAI will be entitled to be fully or partially indemnified and held harmless by Concept [Steel] for any settlement or judgment rendered against RAI. . . .

RAI Complaint, ¶¶45-47, 50. RAI also seeks a judicial determination of the respective rights and duties of RAI and Concept Steel with respect to Sauer. In addition, RAI asserts claims for account stated and goods and services rendered against Sauer.[1]

In a Counterclaim against RAI, Sauer alleges that RAI breached the RAI PO by failing to furnish materials in accordance with the requirements of the plans and specifications for the Project and failing to furnish materials pursuant to Sauer's construction schedule. Sauer further alleges that because of RAI's breach, Sauer incurred additional costs, including payment and delay and disruption claims from Agate, with whom Sauer subcontracted for the structural and miscellaneous steel erection work at the Project ("Agate Subcontract"). Sauer asserts claims for express indemnity and equitable indemnity to recover from RAI any amount it becomes liable to pay on Agate's claims.

Further, Sauer asserts a breach of contract claim against Agate for allegedly failing to: perform its work in accordance with the plans and specifications for the Project; coordinate with Sauer's subcontractors and material suppliers; perform work pursuant to Sauer's construction schedule; and to properly and timely notify Sauer of alleged errors with the steel materials furnished for the Project. Sauer also asserts claims for express and equitable indemnity against Agate to recover any amount incurred to defend against and/or pay for subcontractor claims and owner claims.

Agate, in turn, asserts counterclaims against Sauer. Agate alleges that in the course of erecting the structural and miscellaneous steel furnished by Sauer, Agate discovered deficiencies and errors in the fabrication of certain steel members and gave Sauer timely notice of such deficiencies. Agate alleges that hundreds of the steel components that Sauer provided to Agate

---

[1] Sauer and Federal filed an Answer to RAI's complaint.

onsite were incompatible with Sauer's erection drawing and the field conditions. Sauer allegedly directed Agate to perform remedial work and to produce daily ticket items to document Agate's extra work and right to additional compensation. More specifically, Agate alleges that the structural drawings failed to depict the correct magnitude and location of the steel stud clips required for the Project, and as a result, Agate was required to install approximately 4,000 more clips than was included in its bid and subcontract price. Further, Agate alleges that in accordance with the drawings and Project specifications, Sauer was required, but failed, to provide pre-assembled stairs, landings, and hand rails in the largest shippable size. According to Agate, Sauer directed Agate to field assemble and install the stairs and landings, which required additional labor not included in Agate's Subcontract. Based on the foregoing, Agate asserts claims for breach of written contract for extra work and breach of written contract for delay and disruption against Sauer. Agate also asserts claims for open book account against Sauer and unnamed defendants, as well as a claim for negligent misrepresentation against Sauer for allegedly misrepresenting the scope of work for the Project. In addition, Agate asserts a cross-claim against FIC and Sauer for enforcement of a Miller Act Payment Bond, and another cross-claim against RAI for negligent fabrication of steel and third party tort of another.

### III. STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed if it fails to state a claim upon which relief can be granted. In deciding whether to grant a motion to dismiss, the court generally "may not consider any material beyond the pleadings." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). In considering a motion pursuant to Rule 12(b)(6), the court must accept as true all "well-pleaded factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1988). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Iqbal, 556

U.S. at 678 (internal citations omitted); see also Fed.R.Civ.P. 8(a).

## IV. SAUER'S MOTION TO DISMISS

Sauer moves to dismiss Agate's second counterclaim for delay and disruption on the grounds that the Agate Subcontract contains a "no damage for delay clause." Agate acknowledges that the Subcontract contains such a provision, but contends that the provision only bars damages claims based on work delays, disruption or interference "solely as a result of the acts or omissions of Sauer," and not delays caused by RAI, Concept Steel and others. Further, Agate cites to another provision in the Agate Subcontract allowing Agate to recover for delay or disruption damages awarded to Sauer based on delays beyond Sauer's control. These allegations, however, are not in Agate's counterclaim. Accordingly, Sauer's motion to dismiss that claim is granted with leave to amend to allow Agate an opportunity to clarify the factual basis of its claim.[2]

Sauer moves to dismiss Agate's fourth counterclaim for negligent misrepresentation on the grounds that Agate has failed to plead fraud with particularity as required by Rule 9(b), Fed.R.Civ.P. In its opposition to the motion to dismiss, Agate does not refute Sauer, but instead sets forth two pages of facts to "supplement" its allegations. Opposition at 14-15. On a motion to dismiss, however, the Courts' review is limited to the well-pled facts stated in the complaint. As currently pled, Agate's negligent misrepresentation fails to set forth sufficient facts to satisfy Rule 9(b), and accordingly Sauer's motion to dismiss the claim is granted with leave to amend.

## V. CONCEPT STEEL'S MOTION TO DISMISS OR STAY

Concept Steel moves to dismiss RAI's claim for equitable indemnity asserting, among other things, that the claim fails as a matter of law because RAI has not alleged an underlying tort. Concept Steel also contends that RAI's claims are not ripe. Concept Steel essentially contends that RAI's claims are contingent upon the outcome of a dispute between RAI and Sauer, which had not yet materialized into a lawsuit at the time RAI sued Concept Steel.

---

[2] The Court finds it unnecessary to reach the parties' remaining arguments with respect to the delay and disruption claim until Agate clarifies the basis of its claim.

Case No.: 5:16-cv-03674-EJD
ORDER GRANTING SAUER'S MOTION TO DISMISS AGATE'S SECOND AND FOURTH COUNTERCLAIMS WITH LEAVE TO AMEND; GRANTING CONCEPT STEEL'S MOTION TO DISMISS WITH LEAVE TO AMEND; SETTING CASE MANAGEMENT CONFERENCE

5

In its current state, RAI's equitable indemnity claim lacks the requisite allegations of an underlying tort, and accordingly is subject to dismissal on that basis. In its opposition, however, RAI clarifies that it seeks equitable indemnity based upon contract. See e.g., West v. Superior Court, 27 Cal.App.4th 1625 (1994). Accordingly, RAI is granted leave to amend to assert a claim for implied contractual indemnity.

With respect to Concept Steel's ripeness argument, RAI has alleged that Sauer is currently withholding money from RAI allegedly due to deficiencies in Concept Steel's labor and materials. More importantly, Sauer is now a party to the instant lawsuit and has asserted counterclaims against RAI, including a breach of contract claim which provides a basis for RAI's claims against Concept Steel. Therefore, the Court rejects Concept Steel's ripeness argument.

## VI. CONCLUSION

For the reasons set forth above, Sauer's motion to dismiss Agate's second and fourth counterclaims is granted with leave to amend. Concept Steel's motion to dismiss is granted with leave to amend. Agate and RAI shall file and serve amended pleadings no later than September 25, 2017. Concept Steel's motion to stay is denied without prejudice to renew the motion, if appropriate, after RAI amends its counterclaims.

The Court will conduct a case management conference on October 13, 2017 at 10:00 a.m. The parties shall file an updated joint case management statement no later than October 3, 2017.

**IT IS SO ORDERED.**

Dated: August 25, 2017

EDWARD J. DAVILA
United States District Judge

Case No.: 5:16-cv-03674-EJD
ORDER GRANTING SAUER'S MOTION TO DISMISS AGATE'S SECOND AND FOURTH COUNTERCLAIMS WITH LEAVE TO AMEND; GRANTING CONCEPT STEEL'S MOTION TO DISMISS WITH LEAVE TO AMEND; SETTING CASE MANAGEMENT CONFERENCE
6