UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RAI INDUSTRIAL FABRICATORS, LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>FEDERAL INSURANCE COMPANY, et al.,<br><br>Defendants. | Case No. 5:16-cv-03674-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART SAUER'S MOTION TO DISMISS AGATE STEEL'S FIRST AMENDED COUNTERCLAIM; DENYING SAUER'S MOTION TO STRIKE ALLEGATIONS**<br><br>Re: Dkt. No. 82 |

## I. INTRODUCTION

Subcontractor Agate Steel, Inc. ("Agate") filed a First Amended Counterclaim ("FAC") against general contractor Sauer Incorporated ("Sauer") asserting claims for (1) breach of contract (extra work), (2) breach of contract (delay and disruption), (3) unjust enrichment, and (4) breach of the implied covenant of good faith and fair dealing. Sauer moves to dismiss the second through fourth claims pursuant to Rule 12(b)(6), Fed.R.Civ.P. Sauer also moves to strike allegations regarding the parties' "reasonable contemplation" and Agate Steel's demand for attorneys' fees in the unjust enrichment claim. The Court finds it appropriate to take the motions under submission for decision without oral argument pursuant to Civil Local Rule 7-1(b). For the reasons set forth below, Sauer's motion to dismiss is granted in part and denied in part, and Sauer's motion to strike is denied.

## II. BACKGROUND

Sauer entered into an agreement with the U.S. Army Engineer District, Louisville to design and construct the federally-owned project known as Operational Readiness Training Complex at

Fort Hunter Liggett, California (the "Project"). Sauer entered into a Subcontract Agreement with Agate for the erection of structural and miscellaneous steel for the Project (the "Erection Subcontract" or "Subcontract"). The Subcontract Scope of Work provision provided as follows: "Subcontractor shall furnish all labor, materials, equipment, tools, supplies and all other things necessary to complete diligently and timely the work identified in the attached Schedule A ('Work') for STRUCTURAL AND MISCELLANEOUS STEEL (ERECTION ONLY)." Dkt. No. 40, p.23. The Subcontract included a "no damage for delay clause" providing in pertinent part as follows:

> 3. **Delays.** Sauer shall not be liable to [Agate] for any delay, disruption or interference to [Agate's] Work caused by (1) the act, omission, neglect or default of the Owner or its contractors, subcontractors, employees, servants, agents or consultants, (2) fire, earthquake, natural disaster or other casualty, (3) riots, strikes, or other combined action of the workmen or others, (4) unusually severe weather conditions, (5) changes ordered in the Work, (6) late delivery of the site to [Agate], (7) delay in receiving material or equipment supplied by Sauer, the Owner or others, (8) failure by Sauer or Owner to furnish change authorization, (9) defects in plans and specifications, (10) unexpected soil or other physical conditions, (11) suspension of work upon order of Sauer or the Owner, (12) any extraordinary conditions arising out of war or governmental regulations, (13) any other cause beyond Sauer's direct control; provided, however, Sauer will cooperate with [Agate] in submitting against the Owner any just claim arising from any such delay that is permitted by the General Contract. [Agate] agrees to give Sauer notice within the time required by the General Contract for such claims. [Agate] shall not be entitled to any time extension, cost reimbursement, compensation or damages for any delay, disruption or interference to the Work due to these causes, except to the extent that Sauer is entitled to and actually receives a corresponding time extension, cost reimbursement, compensation or damages from the Owner under the General Contract. [Agate] agrees to accept as its sole relief the relief, if any, that Sauer, on behalf of [Agate], actually receives from the Owner. The granting of such relief by the Owner for these matters shall be an express condition precedent to Sauer's duty of granting relief to [Agate] for such matters. [Agate] shall reimburse Sauer for all reasonable expenses incurred by Sauer in submitting any such claims on behalf of Subcontractor.
>
> Should [Agate's] work be delayed, disrupted, or interfered with solely as a result of the acts or omissions of Sauer or anyone employed by Sauer on the Project, then [Agate] shall receive an extension of time equal to the actual delay to critical path activities

Case No.: 5:16-cv-03674-EJD
ORDER GRANTING IN PART AND DENYING IN PART SAUER'S MOTION TO DISMISS AGATE STEEL'S FIRST AMENDED COUNTERCLAIM; DENYING SAUER'S MOTION TO STRIKE ALLEGATIONS

2

> caused by these delays, as determined by Sauer . . . . An extension of time, as determined by Sauer, or the decision that no extension of time shall be allowed, shall be [Agate's] sole remedy for delay. In exchange, [Agate] expressly waives the right to bring against Sauer any claim for damage or delay, inefficiency, disruption, acceleration, interference, extra work resulting from such delay, extended overhead, wage escalation, overtime wage provisions, lost opportunity or lost profit or financial impact on [Agate's] other projects.

Dkt. No. 40, p.24. The Subcontract also contained an integration clause. Id. at p.34.

In the First Amended Counterclaim, Agate alleges that "[i]n the Erection Subcontract, the Parties contemplated that": Agate would perform its work consistent with the contract documents that Sauer provided for Agate's work which were enumerated in Schedule B; Agate would perform its work consistent with the Project Schedule, namely that the duration of the Project would be 121 days; Sauer and its fabrication subcontractor would provide structural steel consistent with the Project Drawings enumerated in Schedule B; the Contract Drawings would be reasonably accurate and complete; the steel stairs would be provided by Sauer and it subcontractors pre-assembled and ready for installation; and Sauer would grant extensions of time for Agate's performance consistent with the Erection Subcontract. Dkt. 72, p.3. Agate began its work on the Project on March 12, 2015. Id.

Agate alleges that "in sharp contrast to the reasonable contemplation of the Parties, upon execution of the Erection Subcontract," the Project Drawings were significantly changed by Sauer requiring material changes to structural steel fabrication and erection; Agate was required to labor on the Project for 422 days; Sauer's fabrication subcontract provided hundreds of nonconforming steel pieces to the Project, requiring Agate to field modify the nonconforming steel at Sauer's request; the Contract Drawings dramatically understated the number of steel clips required for the Project by 4,000; the steel stairs were provided to Agate in multiple steel pieces that required onsite assembly; and Sauer failed and refused to grant any time extensions to Agate for the delay and extra work required of Agate. Dkt. No. 72, p.4. Agate further alleges that the "foregoing, cardinal changes to the Erection Subcontract and material departures from the reasonable

Case No.: 5:16-cv-03674-EJD
ORDER GRANTING IN PART AND DENYING IN PART SAUER'S MOTION TO DISMISS AGATE STEEL'S FIRST AMENDED COUNTERCLAIM; DENYING SAUER'S MOTION TO STRIKE ALLEGATIONS

3

expectations of the Parties, at the formation of the Erection Subcontract, constitute abandonment of the Erection Subcontract." Id.

In the first claim for breach of contract, Agate seeks to recover the unpaid balance of the "Adjusted Subcontract Sum" ($212,258) plus amounts owing for additional work for which Agate submitted change orders to Sauer ($437,481), for a total outstanding balance of $649,739. Id. at pp.5, 44. Agate also seeks attorneys' fees and costs pursuant to the terms of the Erection Subcontract. Id. at p.7.

In the second claim for "breach of contract for delay and disruption" Agate alleges Sauer warranted and represented to Agate that it would not unreasonably hinder, delay, obstruct, or interfere with Agate's performance of its work on the Project. Id. at p.8. Agate alleges that Sauer breached the warranties and representations by, among other things, failing to properly schedule all trades, failing to follow the pertinent construction schedules, failing to properly process, act upon, or communicate with respect to change order work and requests for information, and making changes to the scope of work, the work flow efficiency, and the sequence of work, as well as other acts and omissions that were unanticipated. Id. Sauer also allegedly failed to properly manage, coordinate, schedule, supervise and oversee the Project. Id. As a result, Agate's work increased from 121 days to 422 days. Id. Agate alleges that the extraordinary delays in the Project constitute a "cardinal" change and/or abandonment of the Erection Subcontract that render the no damages for delay provision inapplicable and unenforceable, and that Sauer is estopped from asserting the no damages for delay provision because Sauer breached the Erection Subcontract. Id. Agate seeks to recover compensatory, consequential and incidental damages in the amount of $698,253, which consists of $303,040 in extended field overhead and $395,213 in extended home office overhead, as well as attorneys' fees and costs. Id.

The third claim is for unjust enrichment. Id. at p.10. Agate seeks to recover the reasonable value of the materials for which it has not been paid plus interest. Id. The fourth claim for breach of the implied covenant of good faith and fair dealing is predicated upon allegations that Agate

Case No.: 5:16-cv-03674-EJD
ORDER GRANTING IN PART AND DENYING IN PART SAUER'S MOTION TO DISMISS AGATE STEEL'S FIRST AMENDED COUNTERCLAIM; DENYING SAUER'S MOTION TO STRIKE ALLEGATIONS

4

lost revenue, profits and lost opportunities beyond the contract damages because of the extra work Sauer directed Agate to perform to correct the steel deficiencies created by others. Id.

### III. STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed if it fails to state a claim upon which relief can be granted. In deciding whether to grant a motion to dismiss, the court generally "may not consider any material beyond the pleadings." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). In considering a motion pursuant to Rule 12(b)(6), the court must accept as true all "well-pleaded factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (internal citations omitted); see also Fed.R.Civ.P. 8(a).

Rule 12(f), Fed.R.Civ.P., permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A motion to strike will generally not be granted unless it is clear the matter to be stricken could not have any possible bearing on the subject matter of the litigation. See RDF Media Ltd. v. Fox Broad. Co., 372 F. Supp. 2d 556, 566 (C.D. Cal. 2005). When the court considers a motion to strike, it "must view the pleading in a light most favorable to the pleading party." In re 2TheMart.com, Inc. Sec. Litig., 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000). A motion to strike should be denied if there is any doubt whether the allegations in the pleadings might be relevant to the action. Id.

### IV. DISCUSSION

A. Motion to Dismiss

Sauer moves to dismiss the second through fourth causes of action. With respect to the second claim, Sauer contends that Agate contractually waived its right to any damages for delays. As to the third claim, Sauer contends that unjust enrichment is not an independent cause of action.

Lastly, Sauer contends that the fourth claim for breach of the implied covenant of good faith and fair dealing should be dismissed because Agate has not alleged breach of a duty independent from the parties' contract.

<u>Second Claim: Breach of Contract for Delay and Disruption Damages</u>

The Subcontract includes a no damages for delay clause. In general, clear and explicit no damages for delay clauses are valid and enforceable. <u>Hansen v. Covell</u>, 218 Cal.622, 627-28 (1933); <u>see</u> <u>also</u> <u>Harper/Nielsen-Dillingham, Builders, Inc. v. United States</u>, 81 Fed.Ct. 687, 679 (2008) (in ruling on summary judgment motion, Federal Claims Court holds that "'no damages for delay' clause in the subcontract in this case provides an iron-bound bar against any potential liability"). Sauer contends that Agate cannot avoid application of the no damages for delay clause by contending that the delays and resulting damages exceeded the "expectation of the parties" because the Subcontract was an integrated agreement and parol evidence is inadmissible.

Although Sauer's reasoning is sound, Agate relies on a California appellate court decision holding that a no damages for delay clause is not an absolute bar to recovery. <u>See</u> <u>Hawley v. Orange County Flood Control</u>, 211 Cal.App.2d 708 (1963) (collecting cases). In <u>Hawley</u>, plaintiff presented evidence of breach of contract based upon the "unreasonable delay" of defendant in furnishing revised construction plans and written authority to proceed with constructing modified manholes. <u>Id</u>. at 712. The trial court entered judgment of nonsuit against the contractor defendant, holding that the no damages for delay clause in the parties' contract barred recovery. On appeal, the plaintiff argued, among other things, that the judgment should be reversed because plaintiff had proved a *prima facie* case of breach of contract and that the damage suffered by plaintiff was not within the contemplation of the parties. The <u>Hawley</u> court agreed with plaintiff and reversed the judgment of nonsuit, reasoning that "whether or not the delay damage clause was intended by the parties to prevent recovery" under the particular circumstances of that case presented a question of fact. <u>Id</u>. at 717.

Here, Agate similarly alleges that Sauer breached the Subcontract in several respects. <u>See</u>

Case No.: 5:16-cv-03674-EJD
ORDER GRANTING IN PART AND DENYING IN PART SAUER'S MOTION TO DISMISS AGATE STEEL'S FIRST AMENDED COUNTERCLAIM; DENYING SAUER'S MOTION TO STRIKE ALLEGATIONS

6

Agate's FAC, ¶¶9-44. In addition to the multiple alleged breaches, Agate alleges that Sauer warranted and represented to Agate that it would not unreasonably hinder, delay, obstruct or interfere with Agate's performance of its work on the Project and that Saucer breached these implied warranties and representations. More specifically, Agate alleges that Sauer failed to properly schedule all trades, failed to follow the pertinent construction schedules, failed to properly process, act upon, or communicate with respect to change order work and requests for information, and made changes to the scope of work, the work flow efficiency and the sequence of work which unreasonably inhibited, delayed and disrupted Agate's work on the Project. FAC, ¶51. Agate also alleges that Sauer made hundreds of changes to Agate's work, refused to approve change orders for time and money for the extra work that Sauer directed Agate to perform, and failed to provide Agate with proper and updated Contract Drawings in a timely manner. Id. at ¶¶52, 57, 58. As a result of the alleged breaches, Agate's work took 422 days to complete instead of the 121 days contemplated by the parties in the Subcontract. Id. at ¶¶10, 17. Like Hawley, supra, Agate's allegations are sufficient to raise a plausible basis for relief. Hawley, 211 Cal.App.2d at 717.

Separate and apart from its reliance on Hawley, supra, Agate argues that the no damages for delay clause is unenforceable because the parties "abandoned" the Subcontract. "[P]rivate parties may impliedly abandon a contract when they fail to follow change order procedures and when the final product differs substantially from the original." Amelco Electric v. City of Thousand Oaks, 27 Cal.App.4th 228, 235 (2002) (citing Opdyke & Butler v. Silver, 111 Cal.App.2d 912, 913-14, 916, 918-19 (1952) and Daugherty Co. v. Kimberly-Clark Corp., 14 Cal.App.3d 151, 154-56, 159 (1971)); see also C. Norman Peterson Co. v. Container Corp. of America, 172 Cal.App.3d 628 (1985). In Opdyke, a contractor sued the owner for services performed in remodeling a building. The contractor alleged that the parties abandoned the written construction contract that included a maximum limit for cost and entered into a new oral contract under which the contractor was to be paid the cost of construction plus ten percent. The appellate

Case No.: 5:16-cv-03674-EJD
ORDER GRANTING IN PART AND DENYING IN PART SAUER'S MOTION TO DISMISS AGATE STEEL'S FIRST AMENDED COUNTERCLAIM; DENYING SAUER'S MOTION TO STRIKE ALLEGATIONS

7

court affirmed judgment in favor of the contractor on a cost plus basis, finding that the trial court was well justified in determining that "by the course of conduct which the parties adopted, they abandoned the price limitation and proceeded upon a straight cost plus basis." Opdyke, 111 Cal.App.2d at 919. The abandonment theory was based on evidence that from the start of the project, the owner "constantly changed his mind concerning the construction, and the completed alterations differ[ed] markedly from the blueprints and specifications that were attached to the original contract." Id. at 916. The evidence of abandonment also included twenty changes to the construction project that "must have interrupted the orderly progress of the work, materially increased the contractor's cost and forced the doing of the work under disadvantageous circumstances." Id. at 917. The Opdyke court also noted that the parties consistently ignored the requirement in the written contract that all change orders should be approved by the architect, in writing, and the contract price be adjusted accordingly before the work was done. Id. at 918.

In C. Norman Peterson Co. ("Peterson"), Container Corporation of America ("Container") contracted with C. Norman Peterson Co. (CNP) to modernize Container's recycling mill. On appeal, the court affirmed judgment in favor of CNP based upon the trial court's finding that the parties had abandoned the construction contract. The Peterson court noted that a construction contract is abandoned "when an owner imposes upon the contractor an excessive number of changes such that it can fairly be said that the scope of the work under the original contract has been altered." Peterson, 172 Cal.App.3d at 640. The evidence of abandonment in Peterson included, among other things, "hundreds of changes, many of them significant, resulting in extra work having to be performed by CNP." Id. at 641. In addition, "[a]s in Opdyke, the requirement for written change orders was ignored during most of the project period, and it was completely abandoned during the critical shutdown stage." Id. Moreover, Container's engineer spent 16,414 hours redesigning the project after Container had begun its work and "there were an extensive number of changes which were beyond the contemplation of the parties when the contract was first executed." Id. at 642. With respect to damages, the Peterson court stated, "once [it is] found

Case No.: 5:16-cv-03674-EJD
ORDER GRANTING IN PART AND DENYING IN PART SAUER'S MOTION TO DISMISS AGATE STEEL'S FIRST AMENDED COUNTERCLAIM; DENYING SAUER'S MOTION TO STRIKE ALLEGATIONS

8

that the terms of a construction contract have been abandoned, the contractor who completes the project is entitled to recover the reasonable value of its services on a quantum meruit basis." Id. at 645.[1]

Here, Agate alleges sufficient facts to support a reasonable inference that the parties impliedly abandoned the Erection Subcontract. Agate alleges that the scope of work defined in the Subcontract was for erection of steel furnished by Sauer. Agate alleges that the Project Drawings were significantly changed by Sauer, which required material changes to the structural steel erection and fabrication. Agate alleges that it was required to perform remedial work that was outside the scope of the Subcontract. More specifically, Agate alleges that Sauer's steel fabrication subcontractor provided hundreds of non-conforming steel pieces and Agate was required to re-fabricate the pieces in the field. Agate also alleges that the contract drawings failed to depict the correct magnitude and location of the steel clips required for the Project, and as a result, Agate was required to install approximately 4,000 more steel clips than Agate included in its bid. Agate also alleges that according to the Project Drawings and specifications, the stairs, landing and hand rails were to be delivered preassembled. Contrary to the Project Drawings and specifications, the stairs and landings were not preassembled and Sauer directed Agate to field assemble and install the stairs and landings, which required additional labor not included in the Subcontract. As in Opdyke and Peterson, Agate also alleges that abandonment of the Subcontract can be inferred from Sauer's failure to comply with the contractual requirement for written approval of extra work. At the pleading stage, these allegations are sufficient to support a reasonable inference that the parties impliedly abandoned the Subcontract. Opdyke, supra;

---

[1] The Peterson court also upheld the trial court's further finding that Container had breached the contract. Id. at 642-44. "[R]ather than being inconsistent with abandonment, ... breaches by [Container] were actually the precipitating cause for the construction contract being abandoned within the meaning of Daugherty and Opdyke and the subsequent implicit understanding by the parties to proceed with the project on a quantum meruit basis." Id. at 643-644.

Case No.: 5:16-cv-03674-EJD
ORDER GRANTING IN PART AND DENYING IN PART SAUER'S MOTION TO DISMISS AGATE STEEL'S FIRST AMENDED COUNTERCLAIM; DENYING SAUER'S MOTION TO STRIKE ALLEGATIONS
9

Peterson, supra. Evidence of express intent to abandon the Subcontract is not required. Opdyke, 111 Cal.App.2d at 916.[2]

Sauer's motion to dismiss the second claim is denied. In allowing Agate to proceed with its second claim beyond the pleading stage, the Court does not intend to render any opinion regarding the entitlement to or the measure of damages. Whether and to what extent Agate may be entitled to damages with respect to its second claim remains to be determined at a later stage in the proceedings.

### Third Claim: Unjust Enrichment

Sauer contends that the third claim for unjust enrichment must be dismissed because California does not recognize unjust enrichment as a freestanding claim. See Hill v. Roll Int'l Corp., 195 Cal.App.4th 1295, 1307 (2011). Although Sauer is technically correct, the Ninth Circuit has held that when a plaintiff alleges unjust enrichment, a court may "construe the cause of action as a quasi-contract claim seeking restitution." Astiani v. Hain Celestial Group, Inc., 783 F.3d 753, 762 (9th Cir. 2015) (citing Rutherford Holdings, LLC v. Plaza Del Rey, 223 Cal.App.4th 221 (2014)). The Court accordingly construes the third claim as a quasi-contract claim for restitution.

Sauer next contends that the third claim fails as a matter of law because an enforceable written contract exists between the parties. See Mosier v. Stonefield Josephson, Inc., 815 F.3d 1161, 1172 (9th Cir. 2016) (quasi-contract action for unjust enrichment does not lie where express binding agreements exist and define the parties' rights); Paracor Fin., Inc. v. Gen. Elec. Capital Corp., 96 F.3d 1151, 1167 (9th Cir. 1996) (unjust enrichment "does not lie when an enforceable, binding agreement exists defining the rights of the parties."); Durell v. Sharp Healthcare, 183

---

[2] Because Agate's second claim is sufficiently pled, the Court finds it unnecessary to consider Agate's alternative arguments at the pleading stage, namely (1) whether the "cardinal change" doctrine, which is founded in government contract law, applies to construction contracts between private entities, and (2) whether the Miller Act, and not the Subcontract, governs the extent to which Agate is entitled to recovery.

Cal.App.4th 1350, 1370 (2010) ("An unjust enrichment theory is inapplicable because Durell alleges the parties entered into express contracts."). Here, however, Agate's unjust enrichment claim is not based solely on the Subcontract. Instead, Agate incorporates by reference all the allegations in the FAC to support its unjust enrichment claim. As discussed previously, Agate alleges in the alternative that the parties impliedly abandoned the Subcontract and that it is entitled to recover the reasonable value of its work. It is permissible for Agate to plead claims in the alternative. Clear Channel Outdoor, Inc. v. Bently Holdings Cal. L.P., No. 11-2573 EMC, 2011 WL 6099394, at *9 (N.D. Cal. Dec. 7, 2011) ("[E]ven though a plaintiff may not ultimately prevail under both unjust enrichment and breach of contract, it may plead both in the alternative."). Sauer's motion to dismiss the third claim is denied.

### Fourth Claim: Breach of the Covenant of Good Faith and Fair Dealing

Sauer contends that the fourth claim for breach of the implied covenant of good faith and fair dealing is nothing more than a restatement of the breach of contract claims and should be dismissed without leave to amend. In response, Agate contends that Sauer breached the covenant of good faith and fair dealing by refusing to grant Agate additional contract time to complete extra work, refusing to pay for change orders that Sauer had approved, and refusing to pay Agate the undisputed balance of its original Subcontract. Agate's Opposition, p.20. Agate also contends that because Sauer withheld payment, Agate was required to finance much of its own work with its own resources, which unjustly deprived Agate of the intended benefits of the Subcontract. Id. Agate allegedly incurred losses as a direct result of Sauer's conduct, including lost profits, lost business opportunities, and legal fees and expenses. Id.

"Every contract imposes on each party a duty of good faith and fair dealing in each performance and in its enforcement." Careau & Co. v. Security Pacific Business Credit, Inc., 222 Cal.App.3d 1371, 1393 (1990) (citing Rest. 2d, Contracts, §205 and collecting cases). The implied covenant "imposes upon each party the obligation to do everything that the contract presupposes they will do to accomplish its purpose." Id. (quoting Schoolcraft v. Ross, 81

Cal.App.3d 75, 80 (1978)). A breach of the implied covenant involves "something beyond breach of the contractual duty itself." Id. at 1394; see also California Shoppers, Inc. v. Royal Globe Ins. Co., 175 Cal.App.3d 1, 54 (1985) ("the authorities hold that breach of the implied covenant of good faith and fair dealing involves something beyond breach of the contractual duty itself"). "Thus, allegations which assert such a claim must show that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." Careau & Co. v. Security Pacific Business Credit, Inc., 222 Cal.App.3d at 1395. "Just what conduct will meet these criteria must be determined on a case by case basis and will depend on the contractual purposes and reasonably justified expectations of the parties." Id.

Agate's allegations do not describe conduct "beyond the breach of the contractual duties" imposed by the Subcontract. Unlike Agate's other claims in which all of the allegations in the FAC are incorporated by reference, Agate's fourth claim is predicated on a narrower set of allegations. Agate alleges that Sauer directed it to perform work outside the scope of the Subcontract over an excessively protracted time and without reimbursement for the additional cost of such work. FAC, ¶¶71-76. These allegations form part of the basis for Agate's breach of contract claims. Because the allegations are simply a restatement of the breach of contract claims, they are insufficient to support a separate claim for breach of the implied covenant of good faith and fair dealing. Careau & Co. v. Security Pacific Business Credit, Inc., 222 Cal.App.3d at 1394.

Agate sets forth new allegations in its Opposition brief to bolster its claim. See Agate's Opposition, p.20 (Saucer acted "without justification" and in "bad faith"). These and other new allegations in Agate's brief cannot be considered in assessing the viability of Agate's claim at the pleading stage. See Schneider v. California Dept. of Corrections, 151 F.3d 1194, 1197, n. 1 (9th

Case No.: 5:16-cv-03674-EJD
ORDER GRANTING IN PART AND DENYING IN PART SAUER'S MOTION TO DISMISS AGATE STEEL'S FIRST AMENDED COUNTERCLAIM; DENYING SAUER'S MOTION TO STRIKE ALLEGATIONS

12

Cir. 1998) (in ruling on a motion to dismiss under Rule 12(b)(6), "a court *may not* look beyond the complaint"). Sauer's motion to dismiss the fourth claim is granted with leave to amend.

B. Motion to Strike

Sauer moves to strike Agate's demand for attorneys' fees in the third claim for unjust enrichment, asserting that fees are not recoverable as a matter of law. Sauer also moves to strike Agate's allegations referring to matters "the Parties contemplated" and matters "[i]n sharp contrast to the reasonable contemplation of the Parties." FAC, ¶¶9-14, 16-21, 54.

### Demand for Attorneys' Fees in the Claim for Unjust Enrichment

Agate objects to the motion to strike on procedural grounds as an improper means to challenge a demand for attorneys' fees. On the merits, Agate asserts that attorneys' fees are "arguably" available as consequential damages because "it was foreseeable that Agate would have to sue." Agate's Opposition to Motion to Strike, p.8.

Sauer's motion to strike the demand for attorneys' fees is denied. Rule 12(f) "does not authorize a district court to dismiss a claim for damages on the basis that it is precluded as a matter of law." Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 974 (9th Cir. 2010); see also First Nat. Ins. Co. of Am. V. Peralta Cmty. Coll. Distr., No. 12-5943 JSC, 2013 WL 622944, at *8 (N.D. Cal. Feb. 15, 2013).

### Allegations re Parties' Contemplations

Agate's FAC includes several allegations regarding the "reasonable contemplation of the Parties." FAC, ¶¶9-14, 16-21, 54. Sauer moves to strike all such allegations as immaterial and impertinent. Sauer reasons that the Subcontract is clear and explicit, and therefore the intent of the parties must be inferred solely from the written provisions of the Subcontract, and not from parol evidence. Sauer also asserts that the allegations are redundant because the parties' alleged contemplations are consistent with the terms of the Subcontract. In opposition, Agate contends that the "reasonable contemplation of the parties" allegations have a direct bearing on the subject matter of the litigation.

Case No.: 5:16-cv-03674-EJD
ORDER GRANTING IN PART AND DENYING IN PART SAUER'S MOTION TO DISMISS AGATE STEEL'S FIRST AMENDED COUNTERCLAIM; DENYING SAUER'S MOTION TO STRIKE ALLEGATIONS

13

Sauer's motion to strike the "reasonable contemplation of the parties" allegations is DENIED. A motion to strike should not be granted "unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." Smith v. Levine Leichtman Capital Partners, Inc., 723 F.Supp.2d, 1205, 1212 (N.D. Cal. 2010) (quoting Colaprico v. Sun Microsystems Inc., 758 F.Supp. 1335, 1339 (N.D. Cal. 1991). Here, the "reasonable contemplation of the parties" allegations have a possible bearing on Agate's quasi-contract claims and its abandonment and cardinal change theories of liability. It is premature at the pleading stage to determine whether the parol evidence rule applies. Whether and to what extent Agate may present evidence in support of its allegations are matters more suited for consideration at the summary judgment stage.

## V. CONCLUSION

For the reasons set forth above, Sauer's motion to dismiss is GRANTED as to the fourth claim and DENIED in all other respects. Agate may file a second amended counterclaim no later than May 22, 2018. Sauer's motion to strike is DENIED.

**IT IS SO ORDERED.**

Dated: May 2, 2018

EDWARD J. DAVILA
United States District Judge

Case No.: 5:16-cv-03674-EJD
ORDER GRANTING IN PART AND DENYING IN PART SAUER'S MOTION TO DISMISS AGATE STEEL'S FIRST AMENDED COUNTERCLAIM; DENYING SAUER'S MOTION TO STRIKE ALLEGATIONS

14