UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| RAI INDUSTRIAL FABRICATORS, LLC, et al., | Case No. 5:16-cv-03674-EJD |
|---|---|
| Plaintiffs, | **ORDER GRANTING IN PART SAUER'S MOTION TO DISMISS** |
| v. | **Re: Dkt. No. 100** |
| FEDERAL INSURANCE COMPANY, et al., | |
| Defendants. | |

## I. INTRODUCTION

This is one of several lawsuits pending in this district that arises out of the construction of the Operational Readiness Training Complex at Fort Hunter Liggett, United States Army Combat Support Training Center, located in Monterey County, California ("Project"). The Army Corp of Engineers awarded a contract to Sauer, Inc. ("Sauer") to design and build the Project. Sauer entered into a subcontract with Agate Steel, Inc. ("Agate") to erect structural and miscellaneous steel for the Project. In a Second Amended Counterclaim ("SAC"), Agate alleges, among other things, that Sauer directed Agate to perform work beyond what was stated in the subcontract and that Sauer owes Agate at least $649,739 for the extra work and materials. Sauer moves to dismiss Agate's fourth claim for "Palpable Unilateral Mistake" and fifth claim for breach of the implied covenant of good faith and fair dealing pursuant to Rule 12(b)(6), Fed.R.Civ.P. The Court finds it appropriate to take the motion under submission for decision without oral argument pursuant to Civil Local Rule 7-1(b). For the reasons set forth below, Sauer's motion to dismiss is granted as to the claim for "Palpable Unilateral Mistake," and denied as to the claim for breach of the implied covenant of good faith and fair dealing.

## II. BACKGROUND[1]

Sauer entered into an agreement with the U.S. Army Engineer District, Louisville to design and construct the Project. SAC ¶ 12. In December of 2014, Sauer entered into a Subcontract Agreement with Agate for erection of structural and miscellaneous steel for the Project (the "Erection Subcontract" or "Subcontract"). *Id*. ¶ 16. The steel materials and fabrication of the steel for the Project were to be provided by Sauer and Sauer's other subcontractors. *Id*.

In the Erection Subcontract, the parties contemplated that Agate would perform its work consistent with the contract documents; the duration of the Project would be 121 days; Sauer and its fabrication subcontractor would provide structural steel consistent with the Project drawings enumerated in Schedule B; the contract drawings would be reasonably accurate and complete; the steel stairs would be provided by Sauer and its subcontractors pre-assembled and ready for installation; and Sauer would grant extensions of time for Agate's performance consistent with the Erection Subcontract. *Id*. ¶¶ 17-22. Agate began work on the Project on March 12, 2015. *Id*. ¶ 23.

"In sharp contrast to the reasonable contemplation of the Parties upon execution of the Erection Subcontract, the Project drawings were significantly changed by Sauer requiring material changes to structural steel fabrication and erection"; Agate was required to labor on the Project for 422 days; Sauer's fabrication subcontract provided hundreds of nonconforming steel pieces to the Project, requiring Agate to field modify the nonconforming steel at Sauer's request; the Contract Drawings dramatically understated the number of steel clips required for the Project; the steel stairs were provided to Agate in multiple steel pieces that required onsite assembly; and Sauer failed and refused to grant any time extensions to Agate for the delay and extra work required of Agate. *Id*. ¶¶ 24-29.

Agate asserts claims for (1) breach of the Subcontract predicated upon Sauer's alleged failure and refusal to pay Agate for its work on the Project and Sauer's alleged failure to execute

---

[1] The Background is a summary of the allegations in the SAC.

Case No.: 5:16-cv-03674-EJD
ORDER GRANTING IN PART MOTION TO DISMISS
2

change orders; (2) breach of contract for delay and disruption; (3) unjust enrichment; (4) "Palpable Unilateral Mistake"; and (5) breach of the covenant of good faith and fair dealing.

## III. STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed if it fails to state a claim upon which relief can be granted. In considering a motion pursuant to Rule 12(b)(6), the court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (internal citations omitted); *see also* Fed. R. Civ. P. 8(a).

## IV. DISCUSSION

A. Fourth Claim: Palpable Unilateral Mistake

Agate's fourth claim is entitled "Palpable Unilateral Mistake." In brief, Agate alleges on information and belief that in reviewing bids, Sauer determined that Agate's bid was substantially lower than the bids from other erection subcontractors; Sauer knew or shown have known that there was a mistake in Agate's bid; Sauer had a duty to notify Agate of the mistake and invite Agate to confirm its bid, but failed to do so; Sauer used the mistake to its advantage; and as a result of this "palpable unilateral mistake," no contract between Agate and Sauer was formed. SAC ¶¶ 81-91.

As a preliminary matter, the claim for "Palpable Unilateral Mistake" is improper because it was filed without leave of court. The May 2, 2018 Order Granting In Part And Denying In Part Sauer's Motion To Dismiss Agate Steel's First Amended Counterclaim; Denying Sauer's Motion To Strike Allegations ("Order") specified that Agate was granted leave to amend its claim for breach of the covenant of good faith and fair dealing. The Order did not authorize the filing of any new claims. On this basis alone, the claim for "Palpable Unilateral Mistake" is subject to dismissal.

Case No.: 5:16-cv-03674-EJD
ORDER GRANTING IN PART MOTION TO DISMISS
3

On the merits, Sauer contends that the claim for "Palpable Unilateral Mistake" should be dismissed because it is not a cognizable legal theory. The Court agrees. In *M.F. Kemper Constr. Co. v. City of Los Angeles*, 37 Cal.2d 696 (1951), the California Supreme Court used the term "palpable" in its discussion of rescission based upon unilateral mistake. The case does not, however, recognize a claim for "palpable unilateral mistake." Nor do the majority of cases cited by Agate. The cases relied upon by Agate state the general proposition that rescission is a legally recognized remedy when a contract is the result of a unilateral mistake. *See Moore v. Copp*, 119 Cal. 429 (1897) (in an action for quiet title, plaintiff's contract with defendant for the purchase of land was void due to plaintiff's unilateral mistake); *Brunzell Const. Co. v. G. J. Weisbrod, Inc.*, 134 Cal. App. 2d. 278 (1955) (rescission applied as a defense against a claim to enforce construction subcontract); *Elsinore Union Elementary School Dist. of Riverside County v. Kastorff*, 54 Cal.2d 380 (1960) (in suit alleging damages resulting from the defendant contractor's refusal to execute a building contract pursuant to the contractor's bid, defendant entitled to rescission).

The only case that lends support to Agate's argument is *Paul Hardeman, Inc. v. Arkansas Power and Light Co.*, 380 F. Supp. 298 (E.D. Ark. 1974). In *Hardeman*, the plaintiff seeking rescission did not point to any specific calculation error, omission, or mistake. Instead, the plaintiff made a generalized assertion that the mistake for which it sought rescission of a construction contract was an inadequately underpriced bid. *Id*. at 309. The *Hardeman* court engaged in an extensive analysis of the facts and law, recognized "palpable unilateral mistake" as a basis for rescission under Arkansas law, but ultimately held that plaintiff was not entitled to relief on the basis of a "palpable unilateral mistake" because the purported mistake was caused by the negligence of plaintiff's estimators. *Id*. 330.

It is unclear what applicability, if any, a 1974 district court decision from Arkansas applying Arkansas law has on the instant action. In any event, as stated previously, the *Hardeman* court did not award plaintiff any relief based upon a "palpable unilateral mistake." Instead, the *Hardeman* court found that the defendant contractor affirmatively misled the plaintiff into

Case No.: 5:16-cv-03674-EJD
ORDER GRANTING IN PART MOTION TO DISMISS
4

believing that plaintiff's bid was competitive and feasible even though the contractor knew it was not. The *Hardeman* court also found that the contractor wrongfully and in bad faith terminated the parties' contract. No such similar facts are alleged in this case.

Setting aside the label "Palpable Unilateral Mistake," Agate next contends that the SAC satisfactorily pleads a basis for rescission under California law. Dkt. No. 101, p. 15. A party must establish the following elements to obtain rescission of a contract: "(1) the defendant made a mistake regarding a basic assumption upon which the defendant made the contract; (2) the mistake has a material effect upon the agreed exchange of performances that is adverse to the defendant; (3) the defendant does not bear the risk of the mistake; and (4) the effect of the mistake is such that enforcement of the contract would be unconscionable." *Donovan v. RRL Corp.*, 26 Cal.4th 261, 282 (2001) (mistake in advertised price of automobile precluded existence of a contract).

Here, Agate fails to allege any facts that satisfy these elements. Agate does not allege that it made a mistake in the bid it submitted to Sauer, much less that the mistake was regarding a basic assumption upon which the contract was made. Instead, Agate alleges on information and belief that Sauer determined Agate's bid was substantially lower than Sauer's cost estimates and the next lowest bid. Notably absent from the SAC is any allegation that Agate's substantially lower bid was the result of a mistake, which makes this case distinguishable from all of the cases relied upon by Agate except *Hardeman*, *supra*. See *M.F. Kemper Constr. Co. v. City of Los Angeles*, 37 Cal. 2d 696 (1951) (construction company submitted a bid that inadvertently omitted a $300,000 item); *Brunzell Const. Co. v. G. J. Weisbrod, Inc.*, 134 Cal. App. 2d. 278 (1955) (defendant steel subcontractor made a mistake when it failed to expressly exclude steel decking from the "Confirmation" letter); *Elsinore Union Elementary School Dist. of Riverside County v. Kastorff*, 54 Cal.2d 380 (1960) (defendant not obliged to execute contract that mistakenly omitted cost of plumbing); *Schultz v. County of Contra Costa*, 157 Cal. App. 3d 242, 250 (1984) (contract to purchase real estate subject to rescission based upon buyer's mistaken belief that land was buildable); *C.N. Monroe Mfg. Co. v. U.S.*, 143 F. Supp. 449 (E. D. Mich. 1956) (plaintiff mistakenly omitted cost of "lifter body" in construction bid); *Poley-Abrams Corp. v. Chaney &*

*James Constr. Co.*, 220 F. Supp. 401 (D. Mass. 1963) (plaintiff mistakenly transcribed $53,951 by leaving out the last digit and wrote down $5,395 in its construction bid). Agate also fails to allege facts to show that it did not bear the risk of mistake. Lastly, Agate fails to allege that enforcement of the subcontract would be unconscionable. "An unconscionable contract ordinarily involves both a procedural and a substantive element: (1) oppression or surprise due to unequal bargaining power, and (2) overly harsh or one-sided results." *Donovan*, 26 Cal. 4th at 291 (citing *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83, 114 (2000)). The SAC lacks any factual allegations to establish these elements. The fourth claim is accordingly dismissed. Because the deficiencies cannot be cured by further amendments, the dismissal is without leave to amend.

B. Fifth Claim: Breach of the Covenant of Good Faith and Fair Dealing

Sauer contends that the claim for breach of the implied covenant of good faith and fair dealing should be dismissed because the claim is nothing more than a restatement of the breach of contract claims. *See Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal. App. 3d 1371, 1394 (1990) (breach of the implied covenant involves "something beyond breach of the contractual duty itself"); *see also California Shoppers, Inc. v. Royal Globe Ins. Co.*, 175 Cal.App.3d 1, 54 (1985) ("the authorities hold that breach of the implied covenant of good faith and fair dealing involves something beyond breach of the contractual duty itself").

Agate's claims for breach of contract and for breach of the implied covenant are clearly related. In support of the breach of contract claim, Agate alleges, among other things, that Sauer breached the Erection Subcontract by failing to execute change orders for some of the additional work Sauer directed Agate to perform. SAC ¶ 51. In support of the breach of implied covenant, Agate alleges that Sauer refused to issue change orders for extra work that Sauer directed Agate to perform; refused to grant AGATE additional time to complete the work; refused to pay for change orders Sauer had approved; and refused to pay the undisputed balance. SAC ¶¶ 97-103.

That they are related, however, does not foreclose the claim for breach of the implied covenant. To the contrary, a party asserting a breach of implied covenant claim must show that

Case No.: 5:16-cv-03674-EJD
ORDER GRANTING IN PART MOTION TO DISMISS

6

the claim is "hinged" to express terms in a contract. *See Berger v. Home Depot U.S.A., Inc.*, 476 F. Supp. 2d 1174, 1177 (C.D. Cal. 2007). The implied covenant of good faith and fair dealing is a "supplement" to the express contractual terms "to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract)." *Love v. Fire Ins. Exch*, 221 Cal. App. 3d 1136, 1153 (1990). The implied covenant "imposes obligations on both contracting parties that include the duty not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract." *Metcalf Const. Co., Inc. v. U.S.*, 742 F.3d 984, 991 (Fed. Cir. 2014) (quoting *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005)). "Both the duty not to hinder and the duty to cooperate are aspects of the implied duty of good faith and fair dealing." *Id*. (quoting *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 820 n. 1 (Fed. Cir. 2010)).

In the present case, the SAC includes allegations that Sauer hindered Agate's performance of the Subcontract and failed to cooperate. Among other things, Agate alleges that Sauer refused, without justification, to issue change orders for extra work and refused, without justification, to grant additional time to perform extra work. SAC ¶¶ 98-100. The effect of Sauer's refusals was to require Agate to finance the work through its own resources and to perform the work at no cost to Sauer. *Id*. ¶¶ 102-103. Agate also alleges that it suffered damages that are different from its breach of contract damages, including but not limited to loss of bonding capacity. *Id*. ¶¶ 104-105.

These allegations are sufficient to describe conduct that goes beyond breach of the Subcontract. The Subcontract does not include an express provision requiring Sauer to approve Agate's proposed changes in contract price or Agate's proposed extensions. Instead, Paragraph 9.B of the Subcontract provides that if the parties are unable to agree to an adjustment in price or extension of time to perform extra work, Sauer "may" direct Agate to perform the change "pending resolution of the proper adjustment or extension." Paragraph 9.B further provides that Agate "shall be entitled to an equitable adjustment for the cost and a time extension" and requires Agate to commence and complete additional work "expeditiously, and despite any disagreement

Case No.: 5:16-cv-03674-EJD
ORDER GRANTING IN PART MOTION TO DISMISS

7

concerning compensation for such changed work." If indeed Sauer acted "without justification," a reasonable jury could find that Sauer breached an implied duty to cooperate and resolve their differences to establish "proper adjustments" and "extensions" for extra work that would be "equitable." *See Careau*, 222 Cal. App. 3d at 1395 (breach of covenant claim may be based upon conduct of the defendant that "demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement").

## V. CONCLUSION

For the reasons set forth above, Sauer's motion to dismiss is GRANTED as to the fourth claim for "Palpable Unilateral Mistake" without leave to amend and DENIED as to the fifth claim for breach of the implied covenant of good faith and fair dealing.[2] Pursuant to Federal Rule of Civil Procedure 12, Sauer shall file and serve an answer no later than November 6, 2018.

**IT IS SO ORDERED.**

Dated: October 23, 2018

EDWARD J. DAVILA
United States District Judge

---

[2] Whether and to what extent Agate is entitled to damages for breach of the implied covenant claim remains to be determined at a later stage in the proceedings.

Case No.: 5:16-cv-03674-EJD
ORDER GRANTING IN PART MOTION TO DISMISS

8