UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| THE UNITED STATES OF AMERICA, FOR THE USE AND BENEFIT OF BERGELECTRIC CORP., et al., Plaintiffs, v. SAUER, INC., et al., Defendants. AND RELATED ACTIONS. | Case No. 5:18-cv-00612-EJD<br><br>**ORDER GRANTING IN PART MOTION TO DISQUALIFY**<br><br>Re: Dkt. Nos. 42 (and 117, 55, 33, 38 in related actions) |
|---|---|

## I. INTRODUCTION

Plaintiff Bergelectric Corp. ("Berg") moves to disqualify Finch, Thornton & Baird, LLP ("FTB") from representing Defendants Sauer, Inc. ("Sauer") and Federal Insurance Company ("Federal") in the following four related actions: (1) *Rai Industrial Fabricators, LLC v. Federal Insurance Company, Sauer, Inc. and Concept Steel, Inc.* ("*Rai Industrial*"), Case No. 5:16-cv-03674-EJD; (2) *Boneso Brothers Construction, Inc. v. Sauer, Inc., Sauer Group, Inc., Federal Insurance Company* ("*Boneso*"), Case No. 5:17-cv-02608-EJD; (3) *Trombley Enterprises, LLC v. Sauer, Inc., Sauer Incorporated, Sauer Group, Inc., Federal Insurance Company* ("*Trombley*"), United States, Case No. 5:17-cv-04568-EJD; and (4) *Fentress Architects, Ltd. v. Sauer Incorporated* ("*Fentress*"), Case No. 5:17-cv-07116-EJD (collective "Related Actions").[1]

---

[1] Berg also moved to disqualify FTB from representing Sauer and Federal in *Burch Construction Company, Inc. v. Sauer, Inc., Federal Insurance Company* ("*Burch*"), Case No. 5:18-cv-01579-EJD. *See* Dkt. No. 30. The *Burch* action was dismissed on October 30, 2018, rendering Berg's motion in the *Burch* action moot.

Case No.: 5:18-cv-00612-EJD
ORDER GRANTING IN PART BERG'S MOTION TO DISQUALIFY FTB
1

1   All of the Related Actions arise out of the construction of the Operational Readiness Training
2   Complex at Fort Hunter Liggett, United States Army Combat Support Training Center, located in
3   Monterey County, California ("Project"). Sauer is the designer and builder of the Project. Federal
4   issued a payment bond to Sauer. The motion was heard on November 29, 2018. For the reasons
5   set forth below, Berg's motion is granted in part such that FTB is ordered disqualified from
6   representing Sauer and Federal in the *Boneso* action.

**II.   BACKGROUND**

Beginning in or around 2005, Berg retained the legal services of Marks, Golia & Finch, LLP, which has since changed names to FTB. Since 2005, the firms have represented Berg on at least fourteen (14) different legal disputes, including multiple matters where Berg was making identical Miller Act bond claims for unpaid contract balances, unpaid change orders, and delay and loss of productivity claims, among others, as similarly asserted in this action. In 2005 and 2009, Marks, Golia & Finch provided Berg with written retainer engagement letters which included several paragraphs dealing with conflicts of interest, including a waiver provision. Anderson Decl., Exs. A, B.

In 2014, Berg began notifying Sauer that Berg was sustaining significant damages from delays on the project. *Id.* ¶ 19. As of May 2016, "Berg began presenting claims, via formal change order requests to Sauer, for significant delay/compression/loss of productivity damages due to scheduling hindrances on the project." *Id.*

In June of 2016, Rai Industrial filed the first of the Related Actions against Sauer, Federal, and Concept Steel, Inc., Case No. 5:16-cv-03674-EJD. In August of 2016, FTB filed an Answer and Counterclaim on behalf of Defendants Sauer and Federal. Berg is not a party to the *Rai Industrial* action.

At the time FTB began representing Sauer and Federal in *Rai Industrial* lawsuit, FTB was also representing Berg. More specifically, in 2016, FTB was actively working on at least three matters: *LA Metro Division 13 Bus Facility*, *MW Builders of Texas, Inc.*, and *Adv. Kiewit-Turner*

Case No.: 5:18-cv-00612-EJD
ORDER GRANTING IN PART BERG'S MOTION TO DISQUALIFY FTB
2

1    *Joint Venture (VA Medical Center Replacement Project)*. *Id*. ¶ 20.[2]

2    In 2017, FTB began representing Sauer and Federal in the *Boneso* action (filed May 5,
3    2017), the *Trombley* action (filed August 9, 2017), and *Fentress* action (filed December 14, 2017).
4    Berg is not a party to any of these actions. There is, however, a reference to Berg in Sauer Group,
5    Inc.'s counterclaim in the *Boneso* action which was filed on January 10, 2018. *See Boneso v.*
6    *Sauer Group, Inc., Federal Insurance Company*, Case No. 5:17-cv-02608-EJD, Dkt. No. 17, ¶ 10.
7    Sauer Group, Inc., a subsidiary corporation of Sauer, entered into a subcontract with Sauer to
8    perform the plumbing, HVAC, and controls and testing work on the Project. *Id*. ¶ 5. Sauer
9    Group, Inc. is represented by FTB and alleges that as a result of Boneso's conduct, Sauer Group,
10   Inc. and Sauer have incurred delay related costs and liabilities, and that Sauer has received
11   payment and delay and disruption claims from subcontractors, including Berg. *Id*. ¶ 10.

12   Berg did not learn of FTB's representation of Sauer and Federal until Berg filed suit
13   against Sauer and Federal on January 29, 2018. *Id*. ¶ 21. Berg's lawsuit, *The United States of*
14   *America for the use and benefit of Bergelectric Corp., Bergelectric Corp. v. Sauer, Inc., Federal*
15   *Insurance Company*, Case No. 5:18-612-EJD, has been ordered related to the Related Actions.

16   In February of 2018, P. Randolph Finch, Jr. ("Finch"), a named partner with FTB, had a
17   telephone conversation with Berg's CEO, Alan J. Mashburn ("Mashburn") regarding Berg's
18   claims against Sauer and Federal. Mashburn's impression of the conversation was that Finch was
19   trying to dissuade Berg from continuing to prosecute its claims against Sauer. Mashburn Decl.,
20   26. On March 13, 2018, the law firm of Martin Hild, P.A. filed an answer on behalf of Sauer and
21   Federal in the Berg lawsuit. In April of 2018, Mashburn informed Finch that Berg objected to
22   FTB representing Sauer and Federal and demanded that the firm withdraw as counsel. After meet
23   and confer efforts failed, Berg filed the instant motion on August 30, 2018.

### III.  STANDARDS

25   "The right to disqualify counsel is a discretionary exercise of the trial court's inherent

---

[2] In the motion papers, Berg asserts that FTB was working on a fourth matter, *Dck Corporation*. This fourth matter, however, is not mentioned in the Anderson Declaration.

powers." *Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 914, 918 (N.D. Cal. 2003). Pursuant to Civil Local Rule 11-4(a)(1), all attorneys appearing in the Northern District of California must comply with the standards of professional conduct required of members of the State Bar of California. As such, this Court applies state law in determining matters of disqualification. *See In re Cty. of L.A.*, 223 F.3d 990, 995 (9th Cir. 2000).

California Rules of Professional Conduct Rule 3-310 provides in pertinent part:

> (C) A member shall not, without the informed written consent of each client:
>   (1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or
>   (2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict; or
>   (3) Represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter.
>
> \* \* \*
>
> (E) A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment.

Cal. R. Prof. Cond. 3-310 (C), (E).[3] The "DISCUSSION" of Rule 3-310 states: "Rule 3-310 is not intended to prohibit a member from representing parties having antagonistic positions on the same legal question that has arisen in different cases, unless representation of either client would be adversely affected."

"Motions to disqualify counsel are strongly disfavored." *Visa U.S.A., Inc. v. First Data Corp.*, 241 F. Supp. 2d 1100, 1104 (N.D. Cal. 2003). Thus, motions to disqualify "should be subjected to particularly strict judicial scrutiny." *Id.* (quoting *Optyl Eyewear Fashion Int'l Corp. v. Style Companies. Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985)). "[T]he paramount concern must be the preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar." *State Farm Mut. Auto. Ins. Co. v. Federal Ins. Co.*, 72 Cal. App. 4th 1422,

---

[3] All references to Rules are to the California Rules of Professional Conduct unless otherwise noted.

1428 (1999).

**IV. DISCUSSION**

Berg contends that FTB should be automatically disqualified from representing Sauer and Federal because of FTB's concurrent representation of Berg and Sauer/Federal. Berg and Sauer/Federal's interests allegedly became adverse as early as 2014, when Berg began submitting change order requests to Sauer while construction of the Project was ongoing. Berg's Motion at 13:22. The concurrent representation of Berg and Sauer/Federal giving rise to the conflict of interest allegedly existed as of (1) August 18, 2016, the date Sauer and Federal filed an answer and counterclaim in the *Rai Industrial* action (*id*. at 14:14-19), or (2) for a period of five months beginning on January 29, 2018, when Berg filed suit against Sauer and Federal, and ending on May 31, 2018, when FTB purported to terminate its representation of Berg (*id*. at 13:9-12).

Berg also contends that FTB should be disqualified from representing Sauer and Federal because of FTB's successive representation of adverse clients. Berg contends that over the course of FTB's 13 years of representing Berg, FTB attorneys Mr. Finch, Ms. Betray and Mr. Baird worked directly with Berg on several matters that are substantially similar to the instant lawsuits, such that access to confidential information by FTB is presumed and disqualification is mandated. Lastly, Berg contends that the prospective waiver provisions in the retainer engagement letters are ineffective.

**A. Simultaneous[4] Representation of Conflicting Interests**

"An attorney's concurrent representation of parties with conflicting interests implicates the duty of loyalty." *Fremont Indemnity*, 143 Cal. App. 4th at 63; *see also Flatt*, 9 Cal.4th at 284 ("The primary value at stake in cases of simultaneous or dual representation is the attorney's duty- and the client's legitimate expectation-of loyalty."). "Attorneys have a duty to maintain undivided loyalty to their clients to avoid undermining public confidence in the legal profession and the

---

[4] Simultaneous representation is also referred to as dual representation (*Flatt v. Superior Court*, 9 Cal.4th 275, 284 (1994) and concurrent representation (*Fremont Indemnity Co. v. Fremont General Corp.*, 143 Cal. App. 4th 50, 63 (2006).

Case No.: 5:18-cv-00612-EJD
ORDER GRANTING IN PART BERG'S MOTION TO DISQUALIFY FTB
5

judicial process." *Id.* An effective attorney-client relationship depends on the client's trust and confidence in counsel. *Id.* Courts will protect the client's expectation of loyalty "to preserve this trust and security in the attorney-client relationship." *Id.*

"No precise formula can be stated for the determination of whether an attorney is representing conflicting interests." *Vivitar Corp. v. Broidy*, 143 Cal. App. 3d 878, 882 (1983). Instead, whether there is a disqualifying conflict of interests "largely turn[s] on the individual facts of the relationships between the parties and the nature of the disputes involved." *Id.* "The most egregious conflict of interest occurs when an attorney represents more than one client in a matter in which their interests are directly adverse." *Fremont Indemnity*, 143 Cal. App. 4th at 64. "A conflict of interest also arises when an attorney represents a client in a matter in which the client's interests are adverse to those of another party and concurrently represents the other party in another matter." *Id.* "An attorney's dual representation of parties in those circumstances presents a conflict of interest even if the two matters are completely unrelated and there is no risk that confidences obtained in one matter could be used in the other." *Id.*; *see also Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co., Inc.*, 6 Cal.5th 59, 84 (2018) (rules against simultaneous representation encompass simultaneous representation in unrelated matters).

Here, Berg and Sauer are not party opponents in any of the Related Actions. Indeed, Berg is not named as a party in any of the Related Actions. Nevertheless, the proscription against adverse representation exists whenever counsel's employment is adverse to the client and can exist even though the client is not a party to the litigation. *American Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton*, 96 Cal. App. 4th 1017, 1039 (2002) (citing *Metro-Goldwyn-Mayer, Inc. v. Tracinda Corp.*, 36 Cal. App. 4th 1832, 1843 (1995)). Applying this standard, FTB's adverse representation began no later than January 10, 2018, when FTB was still representing Berg in matters unrelated to this lawsuit[5] and filed a counterclaim on behalf of Sauer Group, Inc. in the *Boneso* action, alleging among other things that as a result of Boneso's conduct, Sauer had

---

[5] In 2018, FTB was representing Berg in the *MW Builders Of Texas, Inc.* matter. FTB asserts that it concluded representation of Berg in that matter on May 31, 2018.

Case No.: 5:18-cv-00612-EJD
ORDER GRANTING IN PART BERG'S MOTION TO DISQUALIFY FTB
6

received payment and delay and disruption claims from subcontractors, including Berg. In light of this allegation, Berg anticipates that FTB's defense in the *Boneso* action will require FTB to depose Berg's employees to determine Berg's involvement on the Project and the bases of Berg's delay and disruption claims. Boneso's counsel similarly foresees significant discovery and signification litigation as to the causes and extent of delays to the Project. As a result, the *Boneso* action is likely to strain FTB's duty of undivided loyalty to each of its concurrent clients, creating an untenable conflict of interests. *See Gilbert v. National Corp. for Housing Partnerships*, 71 Cal. App. 4th 1240, 1253 (1999) ("a conflict of interest exists whenever a lawyer's representation of one of two clients is rendered less effective because of his representation of the other").[6] Absent informed written consent, this conflict of interests requires disqualification. *See Flatt*, 9 Cal.4th at 284 ("Even though the simultaneous representations may have *nothing* in common, and there is *no* risk that confidences to which counsel is a party in the one case have any relation to the other matter, disqualification may nevertheless be required. Indeed, in all but a few instances, the rule of disqualification in simultaneous representation cases is a *per se* or 'automatic' one.").

**B. Waiver**

FTB was required to obtain informed written consent before assuming representation of Sauer/Federal in the *Boneso* action while simultaneously representing Berg in matters unrelated to the *Boneso* action. *See* Rule 3-310; *see also Flatt*, 9 Cal.4th at 285. "To be informed the client's consent to dual representation must be based on disclosure of all material facts the attorney knows and can reveal." *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co., Inc.*, 6 Cal.5th at 85; *see also Visa U.S.A., Inc. v. First Data Corp.*, 241 F. Supp. 2d at 1105 (a law firm may simultaneously represent two adverse clients if full disclosure of the situation is made to both

---

[6] Rule 1.7(b) of the revised California Rules of Professional Conduct, effective November 1, 2018, provides: "A lawyer shall not, without informed written consent from each affected client and compliance with paragraph (d), represent a client if there is a significant risk the lawyer's representation of the client will be materially limited by the lawyer's responsibilities to or relationships with another client, a former client or a third person, or by the lawyer's own interests." For the reasons discussed above, FTB's representation of Sauer/Federal in the *Boneso* action is likely to be materially limited by FTB's responsibilities to or relationship with Berg.

Case No.: 5:18-cv-00612-EJD
ORDER GRANTING IN PART BERG'S MOTION TO DISQUALIFY FTB
7

clients and both agree in writing to waive the conflict). An advance or prospective waiver of potential future conflicts is permitted under California law. *Visa*, 241 F. Supp. 2d at 1105. "The only inquiry that need be made is whether the waiver was fully informed." *Id*. The following factors may be considered in determining whether a waiver was fully informed: the breadth of the waiver, the temporal scope of the waiver, the quality of the conflicts discussion between the attorney and the client, the specificity of the waiver, the nature of the actual conflict, the sophistication of the client, and the interest of justice. *Id*. at 1106; *see also Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 820 (N.D. Cal. 2004).

Applying these factors, the conflict waivers are inadequate. The 2005 retainer engagement letter contained the following provision:

> 7. <u>Potential Conflicts of Interest</u>. Representation by us in a particular matter is contingent upon clearance of all conflicts of interest checks. With regards to the instant matter, Rules 3-310(B) through 3-310(E) of the Rules of Professional Conduct of the State Bar of California provide as follows:
>
> \* \* \*
>
> With regard to Rule 3-310(B), we disclose that we represent C.E. Wylie, Inc. in a case in which it is adverse to Bergelectric in a case called Bergelectric Corporation v. Gulf Insurance Company, et al., San Diego Superior Court Case No. GIC836896. We do not believe this fact will affect our representation of Bergelectric in the bid protest matter as we require no confidential information from Bergelectric which could be used against it in the C.E. Wylie case.
>
> With regard to Rule 3-310(C), it is our duty not to represent clients whose interests are potentially or actually conflict, unless each client provides us with informed written consent to such representation. Thus our representation of Bergelectric is contingent on both it and C.E. Wylie waiving the conflict created by the above case.
>
> With respect to Rule 3-310(E), as stated above, representation by us is contingent upon clearance of all conflicts of interest checks.
>
> By execution of this agreement, Bergelectric acknowledges our disclosure of, and warnings of, conflicts of interest with respect to the representation of Bergelectric, and waive[s] any and all conflicts of interest which presently exist, or may hereafter exist, by virtue of our representation of Bergelectric. Further, Bergelectric agrees not to seek disqualification of our firm in a matter in which we represent a client adverse to Bergelectric unless Bergelectric makes an

Case No.: 5:18-cv-00612-EJD
ORDER GRANTING IN PART BERG'S MOTION TO DISQUALIFY FTB

8

affirmative showing we have confidential information of Bergelectric by virtue of us representing it, which could be used against it in the matter in which a conflict is claimed. Because conflict waivers are a serious matter, we recommend you review the waivers, before making them, with independent counsel.

Anderson Decl. ¶ 9, Ex. A. The 2009 retainer engagement letter included the following provision:

> 6. Potential Conflicts of Interest. Representation by us in a particular matter is contingent upon clearance of all conflicts of interest checks. With regard to the Palomar and joint venture matters, we are not aware of any conflict. With regards to conflicts arising out of other representations, the California Rules of Professional Conduct provide in pertinent part as follows:
>
> \* \* \*
>
> We represent many general contractors and construction managers with whom Bergelectric does business, including without limit Barnhart, Inc., Erickson-Hall, Echo Pacific, EDGE Development, McCarthy, Ledcor, RQ Construction, Weitz, Whiting-Turner, Sundt and Jaynes, and our livelihood depends on our continuing ability to represent these clients in numerous ongoing legal matters including potential disputes with Bergelectric. In order to preserve our ability to represent clients in legal matters that now exist or which arise in the future, including matters which may be directly adverse to Bergelectric, by signing this agreement Bergelectric agrees we may terminate our representation of Bergelectric at any time if Bergelectric or our other clients refuse to sign a concurrent representation conflict waiver required by Rule 3-310(C)(3). Similarly, in any matter in which we may be adverse to Bergelectric, Bergelectric agrees we may represent the client adverse to Bergelectric unless Bergelectric makes an affirmative showing we obtained confidential information from Bergelectric by virtue of our representation of Bergelectric which could be used against Bergelectric in the case in which a conflict is claimed. In no case will we represent a client adverse to Bergelectric if we actually have confidential information from Bergelectric which could be used against it. Before consenting to our representation on these terms, we recommend you carefully consider the ramifications of our representation on these terms and that you consult with counsel of Bergelectric's choice.

Anderson Decl. ¶ 11, Ex. B. The breadth of the prospective waivers is seemingly limitless, extending to "any and all conflicts of interest which presently exist, or may hereafter exist" and to "any matter in which" FTB may be adverse to Berg. Anderson Decl., Ex. A, B. The prospective waivers also lack any temporal limits. There is no evidence of any discussions between counsel and Berg regarding the 2005 and 2009 waivers. Moreover, the prospective waivers lack any

Case No.: 5:18-cv-00612-EJD
ORDER GRANTING IN PART BERG'S MOTION TO DISQUALIFY FTB
9

specificity as to the conflicts that they cover.

In response, FTB asserts that "a prospective waiver is not required to indicate every conceivable possibility of potential conflict." *Concat*, 350 F. Supp. 2d at 820 (citing *Visa*, 241 F. Supp. 2d at 1105). Nevertheless, informed consent requires that the client have "reasonably adequate information about the material risks of such representation to that client or former client." *Visa*, 241 F. Supp. 2d at 1105 (quoting Restatement (Third) of the Law Governing Lawyers § 122 (2000)). FTB's generic boilerplate prospective waivers fail to provide any information, much less reasonably adequate information, about the risk of conflicts such as the one presented here. The 2009 prospective waiver refers to FTB's ongoing and future representation of general contractors and construction managers with whom Berg does business, without providing any description or examples of the types of claims or disputes that could arise, i.e. delay, disruption and inefficiency claims. This omission cannot be excused simply because delay, disruption and inefficiency claims might be common in construction. The law requires written informed consent, and does not presume consent.

**C.     Delay**

FTB accuses Berg of tactical abuse. FTB contends that Berg filed a motion to consolidate to manufacture the conflict of interests and unduly delayed bringing its motion to disqualify. The arguments are unpersuasive. The Court denied Berg's motion for consolidation before considering the merits of the motion to disqualify. Moreover, the conflict of interests arises from FTB's representation of Sauer, Sauer Group, Inc., and Federal in the *Boneso* action, and exists regardless of whether the cases arising out of the Project are consolidated.

Berg did not unduly delaying filing the instant motion. Berg learned of FTC's representation of Sauer on January 29, 2018. On April 3, 2018, Mashburn demanded that FTB withdraw as counsel for Sauer. Mashburn Decl., ¶ 25. The parties met and conferred (Trachtman Decl., ¶¶ 9-10) and Berg filed its motion to disqualify on August 30, 2018. A five-month delay is not unreasonable under these circumstances. *Cf. Zador Corp. v. Kwan*, 31 Cal. App. 4th 1285, 1301 (1995) (three-year delay suggested motion to disqualify was being used as a litigation tactic).

Case No.: 5:18-cv-00612-EJD
ORDER GRANTING IN PART BERG'S MOTION TO DISQUALIFY FTB
10

### D. Hardship to Sauer

Lastly, FTB contends disqualification will cause significant prejudice to Sauer, an innocent party, who will be forced to expend significant monetary and personnel resources to identify and educate new counsel. FTB raises serious concerns. *See id.* at 1302 (disqualification usually imposes a substantial hardship on the disqualified attorney's client, who must bear the monetary and other costs of finding a replacement and is deprived of the attorney of his or her choice). Nevertheless, disqualification is warranted here because the "paramount concern" must be the preservation of public confidence in the judicial system and the legal profession. *See State Farm Mut. Auto. Ins. Co. v. Federal Ins. Co.*, 72 Cal. App. 4th at 1428; *see also TransPerfect Global, Inc. v. MotionPoint Corp.*, No. 10-2590 CW (JCS), 2012 WL 2343908, at *14 (N.D. Cal. June 20, 2012) (citing *People ex rel Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.*, 20 Cal.4th 1135, 1146 (1999)).

## V. CONCLUSION

For the reasons set forth above, Berg's motion to disqualify FTB from representing Sauer and Federal in the Related Actions is GRANTED in part. FTB is ordered disqualified from representing Sauer and Federal in the *Boneso* action. Berg's motion to disqualify FTB from representing Sauer and Federal in the remaining Related Actions is DENIED without prejudice. FTB's representation of Sauer and Federal in the remaining Related Actions does not present a conflict of interests as these actions are currently pled. Although Sauer has made cross-claims or counterclaims of delay and disruption in the remaining Related Actions, Berg is not specifically referenced in those actions. Berg may renew its motion to disqualify if the pleadings are amended to resemble the pleadings in *Boneso* or other circumstances arise that create a conflict of interests.

**IT IS SO ORDERED.**

Dated: December 18, 2018

EDWARD J. DAVILA
United States District Judge

Case No.: 5:18-cv-00612-EJD
ORDER GRANTING IN PART BERG'S MOTION TO DISQUALIFY FTB
11